## COMMONWEALTH *vs.* RONALD L. BILLINGS.

Plymouth. October 3, 2011. - January 19, 2012.

Present: IRELAND, C.J., SPINA, CORDY, BOTSFORD, GANTS, & DUFFLY, JJ.

*Controlled Substances. Constitutional Law,* Confrontation of witnesses. *Evidence,* Certificate of drug analysis. *Practice, Criminal,* Confrontation of witnesses, Harmless error.

INDICTMENTS found and returned in the Superior Court Department on October 28, 2005.

The cases were tried before *John P. Connor, Jr.,* J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Elizabeth Doherty* for the defendant.

*Mary E. Lee,* Assistant District Attorney, for the Commonwealth.

IRELAND, C.J. In 2006, a jury convicted the defendant of unlawful distribution of cocaine and of a drug offense in a school zone, in violation of G. L. c. 94C, §§ 32A (*c*) and 32J. The Commonwealth introduced a certificate of drug analysis (certificate) without the testimony of the chemical analyst in violation of his right to confrontation pursuant to the United States Supreme Court's decision in *Melendez-Diaz* v. *Massachusetts,* 129 S. Ct. 2527, 2532, 2542 (2009) (*Melendez-Diaz*). In a memorandum and order issued pursuant to its rule 1:28, the Appeals Court, relying on its decision in *Commonwealth* v.

*King*, 77 Mass. App. Ct. 189 (2010), affirmed his convictions, holding that a field test and other circumstances rendered the admission of the certificate harmless beyond a reasonable doubt. *Commonwealth* v. *Billings*, 77 Mass. App. Ct. 1120 (2010). We granted the defendant's application for further appellate review and paired this case for argument with *Commonwealth* v. *King*, *ante* 354 (2012) (*King*), a case that raised the same issue and involved the same prosecutor and the same detective as were involved in this case. Because we conclude, as we did in *King*, that in the specific circumstances of this case, the Commonwealth's evidence was not so overwhelming as to nullify the effect of the erroneously admitted certificate, we reverse the defendant's convictions.

*Facts.* At trial, Detective Robert John Morrissey, Jr., of the Brockton police department testified for the Commonwealth as follows. In July, 2005, he was engaged in an undercover investigation. He drove his unmarked vehicle past a group of men, near a bar in Brockton. He made eye contact with the defendant, and ultimately pulled his vehicle in front of the bar. The defendant approached and asked what Morrissey was looking for. Morrissey stated that he wanted "a twenty of rock," referring to twenty dollars' worth of "crack" cocaine.

The defendant said he would get the "rock," left Morrissey, and conversed with "different people" in the group. He returned, put his hand to his mouth, spit a "piece of white rock" out of his mouth and handed it to Morrissey. Morrissey then gave the defendant twenty dollars.

When Morrissey returned to the police station, he "field tested [the substance]," then sealed the bag, and labeled and secured it to be analyzed later at the State laboratory. His testimony did not provide any details about the field test itself or the results of the test. Morrissey was then asked to identify the certificate of analysis from the State laboratory, and read to the jury the certification that the substance was cocaine. The certificate was admitted in evidence.

In response to the Commonwealth's request to "basically describe" his "specific training with regard to narcotics," Morrissey stated that he had had three days of training at the police academy, a three-day street crime seminar, and a two-week

course with the Federal Drug Enforcement Agency. He also attended, annually, a three-day seminar offered by a narcotics task force on Cape Cod. He stated that he had been working undercover for five years, had been in law enforcement for eleven years, and had participated in thousands of arrests. Morrissey also testified that the substance he purchased from the defendant was "crack" cocaine, but there was no testimony whether he had expertise in identifying cocaine.

The defendant did not testify. His defense was mistaken identity; he argued that, when the defendant was searched, he did not have money or drugs in his possession. On cross-examination of Morrissey, defense counsel ascertained that no deoxyribonucleic acid test was done on the defendant's saliva or on the bag that had been in the defendant's mouth.

In his instructions to the jury, the judge stated that a Massachusetts statute provided that the certificate of drug analysis was "prima facie evidence of the composition and quality of the substance that is analyzed." He further instructed the jury that prima facie means that the certificate was evidence they could consider with other evidence in determining whether the substance was cocaine and that if they accepted the certificate as evidence, they were permitted, but not required, to conclude that the substance was cocaine. The judge also reminded the jury that the Commonwealth had to prove beyond a reasonable doubt that the substance was cocaine.

*Discussion.* The Commonwealth asserts that the erroneous admission of the certificate was harmless beyond a reasonable doubt. It makes essentially the same arguments it made in *King*, including the controlling case law, Morrissey's expertise, the importance of the field test, the defendant's behavior and statement, and the choice of defense, to support its claim that there was ample circumstantial evidence that the substance was cocaine. We addressed these arguments in *King, supra* at 357-361; the analysis there applies with equal force here.

As we stated in *King, supra* at 359, it is clear that the Commonwealth relied primarily on the certificate to prove that the substance was cocaine. Morrissey did not testify concerning any expertise in narcotics identification; his testimony that a field test was conducted did not include the results; he stated that the

substance was sent for "further testing"; and he read the laboratory certification that the substance was cocaine to the jury. In these circumstances, we cannot say that the admission of the certificate was harmless beyond a reasonable doubt. See *Commonwealth* v. *Fluellen*, 456 Mass. 517, 527 (2010) (where certificate "formed a tainted 'core' of evidence from which the rest of the Commonwealth's case radiated," admission not harmless beyond reasonable doubt).

*Conclusion.* For the reasons set forth above, the judgments are reversed, the verdicts set aside, and the case is remanded for a new trial.

*So ordered.*